United States Courts
Southern District of Texas
FILED

*June 03, 2021*

Nathan Ochsner, Clerk of Court

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

UNITED STATES OF AMERICA

v.

CHRISTOPHER KNIGHT LOPEZ
JAYSON LOPEZ
NADIR ABDEL TORRES

CRIMINAL NO. ~~XX XXX XX~~ 4:21cr301

**4:21cr301**

INDICTMENT

The Grand Jury charges:

GENERAL ALLEGATIONS

I.     The Fraudulent Scheme

1.     Beginning in or about May 2015, and continuing through the Present, the defendants Christopher Knight Lopez ("Christopher Lopez"), Jayson Lopez, and Nadir Abdel Torres ("Nadir Torres"), and others known and unknown engaged in an unlawful scheme to defraud their clients by soliciting money to invest based on materially false information. The defendants then misappropriated substantial portions of their clients' investments for their own personal use, and to pay false returns to other investors to create the false impression that their investments were generating real returns. This type of investment scheme is often referred to as a "Ponzi scheme."

II.    Entities Involved In The Fraudulent Scheme

2.     Knight Nguyen Investments is a company located in Houston, Texas. Christopher Lopez filed the documents that formed Knight Nguyen Investments in Fort Bend County, Texas on or about March 30, 2015.

1

3.      Aevum Holdings Incorporated, is a company located in Orlando, Florida ("Aevum Holdings"). Jayson Lopez filed the documents that formed Aevum Holdings in Florida on or about September 17, 2015.

4.      Blue Line Mining, Ltd. purports to be a company located in Seychelles and Cyprus owned by Individual Z and Individual H ("Blue Line Mining (Seychelles)").

5.      Blue Line Mining LLC is a company located in Orlando, Florida. ("Blue Line Mining (FL)"). The managers of Blue Line Mining (FL) were listed as Jayson Lopez, Individual Z and Individual H. Jayson Lopez filed the documents that formed Blue Line Mining (FL) on or about March 23, 2017.

III.    The Mortgage Company Investment Scam

A.    *The forged UBS account records*

6.      In or about 2016, Mortgage Company 1 was seeking to borrow money to increase its warehouse line of credit. Mortgage Company 1 was introduced to Christopher Lopez as a person who could help them raise money. Christopher Lopez told Mortgage Company 1 that Aevum Holdings was willing to provide $2.5 million to Mortgage Company 1 at an interest rate of 8.0%. The $2.5 million Aevum Holdings was offering was purportedly being provided by Nadir Torres.

7.      On or about April 14, 2016, Nadir Torres opened two accounts at UBS Financial Services Inc. ("UBS") with account numbers xxxx137 and xxxx138. UBS account no. xxxx138 was the account that would purportedly hold the $2.5 million for Mortgage Company 1's benefit. However, no money was ever deposited into either of these UBS accounts.

8.      Also on or about April 14, 2016, Nadir Torres and Jayson Lopez executed an agreement described as a "Confidential Private Offering" for Aevum Holdings, a company owned by Jayson Lopez. Under the terms of the agreement, Nadir Torres purported to pay $2.5 million to

Aevum Holdings in exchange for 2.5 million shares of Aevum Holdings stock. However, no money was ever transferred because the UBS accounts were never funded.

9.      On or about April 18, 2016, Nadir Torres told a UBS financial advisor that he wanted to wire between $500 million and $1 billion into his UBS account. Nadir Torres requested a letter from UBS stating that they can accept a bank guarantee wire within that range.

10.      On or about April 19, 2016, in response to Nadir Torres' request, UBS sent him a letter signed by UBS Employee 1. The letter stated that UBS could accept a wire transfer of funds between $500 million and $1 billion. The letter included wiring instructions for completing the wire transfer.

11.      On or about August 15, 2016, Christopher Lopez sent an email to Mortgage Company 1. Christopher Lopez attached to the email a purported screenshot of an online banking account summary for UBS accounts xxxx137 and xxxx138. The screenshot was forged to falsely claim that account xxxx137 contained $17.5 million, and that account xxxx138 contained $2.5 million. In truth and fact, neither account had any money in them. Christopher Lopez also attached to the email a forged letter purportedly from UBS. According to the fraudulent letter, UBS confirmed the balance of $2.5 million in account xxxx138. The letter was purportedly signed by UBS Employee 1, but the signature was forged and appears to have been digitally copied from the letter UBS sent to Nadir Torres on April 19, 2016.

12.      On or about August 18, 2016, Mortgage Company 1 entered into an agreement with Jayson Lopez, brokered by Christopher Lopez. Under the terms of the agreement, Jayson Lopez and Aevum Holdings would provide "investment reserve capital" of $2.5 million to Mortgage Company 1. The agreement also obligated Christopher Lopez, through his company Knight Nguyen Investments, to provide Mortgage Company 1 with a "bona fide account statement"

3

showing liquid cash holdings in the amount of $2.5 million for the benefit of Mortgage Company 1. In return, Mortgage Company 1 agreed to pay $16,666.67 per month to Christopher Lopez through his company, Knight Nguyen Investments.

13.     On September 29, 2016, Christopher Lopez sent an email to Mortgage Company 1 with an attachment containing a forged letter purportedly from UBS. According to the fraudulent letter, UBS confirms the balance of $2.5 million in account xxxx138 for the benefit of Mortgage Company 1. The letter was purportedly signed by UBS Employee 1, but the signature was forged and appears to have been digitally copied from the letter UBS sent to Nadir Torres on April 19, 2016.

14.     From on or about August 17, 2016 through June 16, 2017, Mortgage Company 1 paid Christopher Lopez via Knight Nguyen Investments a total of $173,656.93, which represented the interest payment they were required to make under the agreement with Christopher and Jayson Lopez on the non-existent $2.5 million.

B.     *The misappropriation of Investor B's money*

15.     In September 2016, Investor B agreed to invest her retirement savings with Christopher Lopez. Christopher Lopez explained to Investor B that she would be investing $500,000 in Mortgage Company 1 in return for 9.25% interest. Mortgage Company 1 was supposed to pay monthly interest payments to Christopher Lopez, who would then transfer the payment to Investor B. Investor B's principal balance of $500,000 would be returned to her after five years.

16.     In or about late September 2016, Investor B transferred a total of approximately $671,456.43 to Christopher Lopez via Knight Nguyen Investments for him to manage. Investor B

required Christopher Lopez to obtain her written, signed, and notarized authorization before he could invest any of her money.

17.    On or about October 11, 2016, Christopher Lopez transferred $449,900 belonging to Investor B to Mortgage Company 1. This investment principal was never returned to Investor B.

18.    On or about October 17, 2016, Christopher Lopez transferred $43,310 belonging to Investor B to Graphic Tools Company 1. Christopher Lopez never obtained Investor B's authorization to invest her money in Graphic Tools Company 1, and this investment principal was never returned to Investor B.

19.    On or about October 27, 2016, Christopher Lopez transferred $19,990 belonging to Investor B to Graphic Tools Company 1. Christopher Lopez never obtained Investor B's authorization to invest her money in Graphic Tools Company 1, and this investment principal was never returned to Investor B.

20.    On or about November 2, 2016, Christopher Lopez transferred $91,810 belonging to Investor B to Medical Devices Company 1. Christopher Lopez never obtained Investor B's authorization to invest her money in Medical Devices Company 1, and this investment principal was never returned to Investor B.

21.    From on or about November 1, 2016 to November 7, 2017, Mortgage Company 1 paid Christopher Lopez via Knight Nguyen Investments a total of $50,104.08, which represented the interest payment on Investor B's $500,000 investment.

22.    From on or about November 2, 2016 to November 1, 2017, Investor B received a total of $80,954.02 in purported returns from Christopher Lopez via Knight Nguyen Investments. However, Investor B never received the return of her $671,456.43 investment principal.

5

IV.    The Blue Line Mining Investment Scam

23.    In or about March 2017, Christopher Lopez begins to recruit investors to invest in a gold investment scam involving Blue Line Mining Ltd. (Seychelles) and Blue Line Mining LLC (FL).

24.    On or about March 23, 2017, Jayson Lopez formed Blue Line Mining (FL) in the State of Florida.

25.    Beginning in or about March 2017, Christopher Lopez and his associates solicited investors to invest money in "Blue Line Mining". Christopher Lopez and his associates told investors that they were investing in a company that purportedly purchased gold in west Africa, shipped it to a gold refinery in Lebanon, and sold the gold for a profit. Christopher Lopez and his associates told investors false information about the investment, including that they would receive very large returns, and that their money was covered by insurance and secured by gold. However, Christopher Lopez and Jayson Lopez knew the gold investment was a scam that would not result in the shipment and sale of any gold, and that it would not generate any returns for the investors.

26.    In or about late 2017, Christopher Lopez applied for professional liability insurance for coverage to begin November 13, 2017. Despite Christopher Lopez's claims to his clients that their gold was insured, the insurance policy he applied for was a professional liability policy against errors and omissions, not an insurance policy for gold. Furthermore, Christopher Lopez provided the following false information in the application for the insurance policy:

a.    Christopher Lopez falsely described his type of business as "Project manager (architecture or engineering)," when in truth and fact he was conducting business as an investment advisor.

6

b.      Christopher Lopez falsely stated that his estimated total annual revenue for the next 12 months would be "$420,000" and the estimated gross revenue he would earn from his largest project would be "$98,000."

c.      Christopher Lopez falsely stated that the majority of his projects fall into the category of "Residential Homes," when in truth and fact he was conducting business as an investment advisor.

27.     From in or about March 2017 through March 2018, Christopher Lopez and his associates raised over $1.1 million from investors in the gold investment scam. Jayson Lopez facilitated the movement of this money through various banking platforms to conceal the fact that a significant portion of this money was misappropriated by Christopher Lopez, Jayson Lopez, Nadir Torres, and their associates for their own personal use. Some of the money was also used to pay fake returns to other investors in furtherance of the Ponzi scheme.

28.     In or about June 2018, Christopher Lopez and his associates told investors about a purported shipment of 25.4 kg of gold worth over $1 million that would result in significant profits to the investors. In truth and fact, Christopher Lopez and Jayson Lopez knew that the 25.4 kg shipment of gold did not exist.

29.     From in or about May 2017 through May 2018, Christopher Lopez and Jayson Lopez paid fake returns to the investors to create the false impression that their investments were generating real returns, in furtherance the Blue Line Mining investment scam.

30.     On or about November 1, 2018 Christopher Lopez submitted an insurance claim on his professional liability insurance policy in an attempt to be paid for the supposed lost shipment of over $1 million worth of gold. During the claim process, Christopher Lopez submitted false information to the insurance company, including a letter that listed $950,107.73 in payments that

were purportedly made to Blue Line Mining (Seychelles) via an electronic money payment system. In truth and fact, a significant majority of this money went to Christopher Lopez, Jayson Lopez, Nadir Torres, and their associates for their own personal use, and to pay fake returns to other investors in furtherance of the Ponzi scheme.

31.     On or about November 29, 2018, Christopher Lopez's insurance claim for the purported lost shipment of gold was denied because the insurance policy was limited to claims related to construction management services.

32.     The investors in the Blue Line Mining investment scam lost all of the money they invested, other than the fake returns they received between May 2017 and May 2018 as described above.

V.      The Biosciences Company Investment Scam

33.     In or about early 2015, Christopher Lopez was introduced to Scientist 1. Scientist 1 and others had received a patent on an anti-cancer drug that also had other potential uses. Christopher Lopez offered form a company to help Scientist 1 develop and commercialize the anti-cancer drug.

34.     On or about April 21, 2015, Christopher Lopez incorporated Biosciences Company 1 in the State of Florida. Christopher Lopez was identified as an Officer and the Registered Agent of the company. Scientist 1 was identified as the President of the company.

35.     In or about late 2016, Christopher Lopez and Jayson Lopez informed Scientist 1 about a company called Orchid Europe Ltd. they claimed was willing to invest $50 million into Biosciences Company 1. Nadir Torres was the purported Chief Financial Officer of Orchid Europe. According to the purported agreement, Orchid Europe would place approximately $50 million into a foreign bank account that Biosciences Company 1 would have access to after it reached clinical

trials in its anti-cancer drug. In exchange, Biosciences Company 1 would issue shares of stock to Orchid Europe.

36.     On or about November 2, 2016, Christopher Lopez sent an email to Scientist 1 with the proposed agreement with Orchid Europe attached. The agreement contained a forged screen shot purporting to be a statement from the Royal Bank of Scotland ("RBS") for account number xxxx937 in the name of "Orchid Europe Ltd." The statement purports to show a balance of 50 million Euros in the account as of October 15, 2016, which would have equaled approximately $53 million. The account statement was fake because Orchid Europe did not have an account at RBS.

37.     On or about November 4, 2016, Nadir Torres and Christopher Lopez executed the above-described agreement between Orchid Europe and Knight Nguyen Investments. However, Christopher Lopez and Nadir Torres both knew the agreement was a sham and the $50 million did not exist.

38.     On or about March 28, 2017, Christopher Lopez sent an email to Scientist 1 and Jayson Lopez that said "50mm deposited" with an attachment that was a forged bank account statement purportedly issued by RBS for account xxxxx937 in the name of Biosciences Company 1. The statement showed a balance in the account of 50 million Euros, which would have equaled approximately $53 million. However, the bank statement was forged and neither the RBS account nor the 50 million Euros actually existed.

39.     From in or about January 2017 through December 2018, Christopher Lopez and his associates raised over $1.1 million from investors in the Biosciences Company investment scam. Christopher Lopez provided false and misleading information to actual and potential investors in furtherance of the scheme, including:

a.      Christopher Lopez provided investors with false and fraudulent documents that inflated Biosciences Company 1's assets by including the non-existent $53 million RBS account.

b.      Christopher Lopez falsely told investors that he was going to help Biosciences Company 1 become publicly traded on the Bermuda Stock Exchange, which would result in substantial profits to the investors. However, Christopher Lopez never got Biosciences Company 1 listed on any public stock exchange.

40.      On or about March 12, 2018, Christopher Lopez used the name, date of birth, and social security number of Scientist 1 in a credit card application submitted to American Express without Scientist 1's knowledge or permission. Christopher Lopez obtained credit cards in the name of Christopher Lopez, Jayson Lopez, and other associates of Christopher Lopez. Christopher Lopez and Jayson Lopez used these credit cards for personal expenses as well as business expenses.

41.      Christopher Lopez also obtained a credit card through this application in the name of Scientist 1. Christopher Lopez gave this card to Scientist 1 and left him with the mistaken impression that the card was a corporate credit card issued to Scientist 1 as an employee of Biosciences Company 1, rather than a credit card in his personal name.

VI.      Manner and Means of the Conspiracy

42.      The manner and means used by the defendants to further the scheme and artifice to defraud included, among others:

43.      Forging bank statements and other records, and providing these fake documents to investors and others in furtherance of the fraudulent scheme.

44. Misrepresenting the risks associated with the investments their clients were making, including promising high returns with little or no risk.

45. Making false and misleading statements about the finances and accomplishments of the companies their clients invested in.

46. Using funds received from new investors to pay fake "returns" to earlier investors to create the false impression among their clients that their investments were generating real returns.

47. Misappropriating investors' money to their own personal use.

48. Moving investors' money between the defendants' various investment scams without authorization.

VII. Overt Acts

49. In furtherance of the conspiracy, and to effect the objects of the conspiracy, the following overt acts, among others, were committed in the Southern District of Texas and elsewhere:

50. On or about March 30, 2015, Christopher Lopez formed Knight Nguyen Investments in Houston, Texas.

51. On or about September 17, 2015, Jayson Lopez formed Aevum Holdings in Orlando, Florida.

52. On or about April 14, 2016, Nadir Torres opened account numbers xxxx137 and xxxx138 at UBS.

53. In or about June 2016, Jayson Lopez opened accounts at an electronic money payment system. The purpose of the accounts was to conceal the misappropriation of their clients' money by Christopher Lopez, Jayson Lopez, Nadir Torres, and their associates.

54.     On or about August 15, 2016, Christopher Lopez sent an email to Mortgage Company 1 with a forged screenshot of UBS accounts xxxx137 and xxxx138. The email also contained a forged letter from UBS dated August 11, 2016, purportedly confirming a $2.5 million balance in account xxxx138.

55.     On or about September 29, 2016, Christopher Lopez sent an email to Mortgage Company 1 with a forged letter from UBS dated September 27, 2016, purportedly confirming a $2.5 million balance in account xxxx138.

56.     On or about October 11, 2016, Christopher Lopez transferred $449,900 belonging to Investor B to Mortgage Company 1.

57.     On or about October 17, 2016, Christopher Lopez transferred $43,310 belonging to Investor B from Knight Nguyen Investments Bank of America account no. xxxx8512 to Graphic Tools Company 1 without Investor B's authorization.

58.     On or about October 27, 2016, Christopher Lopez transferred $19,990 belonging to Investor B from Knight Nguyen Investments Bank of America account no. xxxxx3964 to Graphic Tools Company 1 without Investor B's authorization.

59.     On or about November 2, 2016, Christopher Lopez transferred $91,810 belonging to Investor B from Knight Nguyen Investments Bank of America account no. xxxxx3964 to Medical Devices Company 1 without Investor B's authorization.

60.     On or about November 3, 2016, Jayson Lopez transferred $81,992.65 from Aevum Holdings Bank of America account no. xxxxx8457, to an electronic money payment system.

61.     On or about November 4, 2016, Nadir Torres and Christopher Lopez executed an agreement titled, "Custodial Account Designation & Warranty," between Orchid Europe Ltd. and Knight Nguyen Investments. According to the agreement, Orchid Europe would place

12

approximately $50 million into a bank account at RBS that Biosciences Company 1 would have access to after it reached clinical trials in its anti-cancer drug. However, the RBS account was never funded. In addition, both Christopher Lopez and Nadir Torres knew the agreement was a sham and the $50 million did not exist.

62.　　On or about March 28, 2017, Christopher Lopez sent an email to Scientist 1 and Jayson Lopez that said "50mm deposited" with an attachment that was a forged bank account statement purportedly issued by RBS for account "23117937" in the name of Biosciences Company 1. The statement showed a balance in the account of 50 million Euros, which would have equaled approximately $53 million. However, the bank statement was forged and neither the RBS account nor the 50 million Euros actually existed.

63.　　On or about March 23, 2017, Jayson Lopez formed Blue Line Mining (FL) in the State of Florida.

64.　　On or about March 30, 2017, Christopher Lopez and Individual Z transferred $186,000.00 from Knight Nguyen Investments Bank of America account no. xxxxx9845 to an electronic money payment system.

65.　　On or about April 3, 2017, Christopher Lopez and Jayson Lopez transferred $4,840.00 from Knight Nguyen Investments Bank of America account no. xxxxx9845 to an electronic money payment system.

66.　　On or about July 19, 2017, Jayson Lopez and Individual Z transferred $59,900.00 from Blue Line Mining (FL) Bank of America account no. xxxxx2621 to an electronic money payment system.

67.     On or about September 15, 2017, Jayson Lopez transferred $80,000.00 from Blue Line Mining (FL) Bank of America account no. xxxxx2621 to an electronic money payment system.

68.     In or about late 2017, Christopher Lopez applied for a professional liability insurance policy in furtherance of the Blue Line Mining investment scam. Christopher Lopez provided false information in the application.

69.     On or about March 12, 2018, Christopher Lopez submitted a credit card application to American Express using the name, date of birth, and social security number of Scientist 1 without Scientist 1's knowledge or permission.

70.     On or about November 1, 2018, Christopher Lopez submitted an insurance claim on his professional liability insurance policy in an attempt to be paid for the non-existent 25.4 kg gold shipment he falsely claimed had been stolen.

COUNT ONE
(Conspiracy to Commit Wire Fraud, 18 U.S.C. § 371)

71.     Paragraphs 1 through 70 of this Indictment are hereby incorporated by reference as though fully set forth herein.

72.     From in or about May 2015, and continuing through the Present, in the Southern District of Texas and elsewhere, the defendants,

CHRISTOPHER KNIGHT LOPEZ,
JAYSON LOPEZ, and
NADIR ABDEL TORRES,

knowingly and willfully conspired and agreed with each other, and other persons both known and unknown, to commit offenses against the United States, to wit: wire fraud, in violation of 18 U.S.C. § 1343, that is to devise and intend to devise, with intent to defraud, a scheme and artifice to

defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and to transmit and cause to be transmitted, by means of wire communication in interstate or foreign commerce, writings and signals for the purpose of executing the scheme and artifice, and at least one conspirator did at least one overt act to effect the object of the conspiracy, in violation of 18 U.S.C. § 371.

## COUNTS TWO THROUGH SIXTEEN
(Wire Fraud, 18 U.S.C. § 1343)

73.     Paragraphs 1 through 70 of this Indictment are hereby incorporated by reference as though fully set forth herein.

74.     From in or about May 2015, and continuing through the Present, in the Southern District of Texas and elsewhere, the defendants,

CHRISTOPHER KNIGHT LOPEZ,
JAYSON LOPEZ, and
NADIR ABDEL TORRES,

devised and intended to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises.

75.     On or about each of the dates listed in the table below, in the Southern District of Texas, and elsewhere, the defendants, aiding and abetting each other and others, for the purpose of executing the scheme described above, did transmit and cause to be transmitted by means of wire communications in interstate or foreign commerce, the following writings and signals, as more specifically described below:

| COUNT | DATE | DESCRIPTION OF WIRE COMMUNICATION |
|-------|------|-----------------------------------|
| 2 | August 17, 2016 | Wire transfer of $16,666.66 from Eagle Bank account xxxx7962 to Christopher Lopez via Knight Nguyen Investments Bank of America account xxxx3495. |

| COUNT | DATE | DESCRIPTION OF WIRE COMMUNICATION |
|---|---|---|
| 3 | November 1, 2016 | Wire transfer of $3,854.16 from Eagle Bank account xxxx7962 to Christopher Lopez via Knight Nguyen Investments Bank of America account xxxx3495. |
| 4 | January 30, 2017 | Wire transfer of $86,000.00 from Wells Fargo Bank account xxxx5635 to Christopher Lopez via Knight Investments Trust Capital One Bank account xxxx8162. |
| 5 | March 9, 2017 | Wire transfer of $100,000.00 from Wells Fargo Bank account xxxx5635 to Christopher Lopez via Knight Investments Trust Capital One Bank account xxxx8162. |
| 6 | March 27, 2017 | Wire transfer of $280,000.00 from Compass Bank account xxxx5278 to Christopher Lopez via Knight Nguyen Investments Bank of America account xxxx3964. |
| 7 | June 27, 2017 | Wire transfer of $46,000.00 from Icon Bank of Texas account xxxx2114 to Jayson Lopez via Blue Line Mining LLC Bank of America account xxxx2621. |
| 8 | June 27, 2017 | Wire transfer of $37,000.00 from Icon Bank of Texas account xxxx2114 to Jayson Lopez via Blue Line Mining LLC Bank of America account xxxx2621. |
| 9 | June 27, 2017 | Wire transfer of $30,000.00 from Icon Bank of Texas account xxxx2114 to Jayson Lopez via Blue Line Mining LLC Bank of America account xxxx2621. |
| 10 | June 27, 2017 | Wire transfer of $27,000.00 from Icon Bank of Texas account xxxx2114 to Jayson Lopez via Blue Line Mining LLC Bank of America account xxxx2621. |
| 11 | July 18, 2017 | Wire transfer of $75,000.00 from Icon Bank of Texas account xxxx2114 to Jayson Lopez via Blue Line Mining LLC Bank of America account xxxx2621. |
| 12 | September 7, 2017 | Wire transfer of $92,000.00 from Icon Bank of Texas account xxxx2114 to Jayson Lopez via Blue Line Mining LLC Bank of America account xxxx2621. |
| 13 | January 9, 2018 | Wire transfer of $92,000.00 from Icon Bank of Texas account xxxx2114 to Jayson Lopez via Blue Line Mining LLC Bank of America account xxxx2621. |

| COUNT | DATE | DESCRIPTION OF WIRE COMMUNICATION |
|-------|------|-----------------------------------|
| 14 | March 16, 2018 | Wire transfer of $52,000.00 from Icon Bank of Texas account xxxx2114 to Biosciences Company 1's Bank of America account xxxx2615. |
| 15 | June 18, 2018 | Wire transfer of $146,000.00 from Icon Bank of Texas account xxxx2114 to Biosciences Company 1's Bank of America account xxxx2615. |
| 16 | June 18, 2018 | Wire transfer of $30,500.00 from Icon Bank of Texas account xxxx2114 to Biosciences Company 1's Bank of America account xxxx2615. |

COUNTS SEVENTEEN AND EIGHTEEN
(Aggravated Identity Theft, 18 U.S.C. § 1028A)

76.     The allegations contained in paragraphs 1 through 70 of this Indictment are hereby

incorporated by reference as though fully set forth herein.

77.     On or about each of the dates in the table below, in the Southern District of Texas

and elsewhere, the defendants,

CHRISTOPHER KNIGHT LOPEZ,
JAYSON LOPEZ, and
NADIR ABDEL TORRES,

aiding and abetting each other, did knowingly transfer, possess, and use, without lawful authority,

a means of identification of another person during and in relation to a felony violation enumerated

in 18 U.S.C. § 1028A(c), that is violations of 18 U.S.C. §§ 1343 (wire fraud), and 1349

(conspiracy), knowing that the means of identification belonged to another actual person, all in

violation of 18 U.S.C. § 1028A(a)(1), as further described in the table below:

| COUNT | DATE | MEANS OF IDENTIFICATION |
|-------|------|-------------------------|
| 17 | August 15, 2016 | Name and signature of UBS Employee 1, in relation to a violation of 18 U.S.C. § 1343 (wire fraud) as charged in Count 2, and § 1349 (conspiracy). |
| 18 | September 29, 2016 | Name and signature of UBS Employee 1, in relation to a violation of 18 U.S.C. § 1343 (wire fraud) as charged in Count 2, and § 1349 (conspiracy). |

## COUNT NINETEEN
### (Aggravated Identity Theft, 18 U.S.C. § 1028A)

78.     The allegations contained in paragraphs 1 through 70 of this Indictment are hereby incorporated by reference as though fully set forth herein.

79.     On or about March 12, 2018, in the Southern District of Texas and elsewhere, the defendant,

### CHRISTOPHER KNIGHT LOPEZ,

did knowingly transfer, possess, and use, without lawful authority, a means of identification of another person during and in relation to a felony violation enumerated in 18 U.S.C. § 1028A(c), that is violations of 18 U.S.C. §§ 1343 (wire fraud), and 1349 (conspiracy), knowing that the means of identification belonged to another actual person, that is: Christopher Lopez used the name, date of birth, and social security number of Scientist 1 in a credit card application submitted to American Express on or about March 12, 2018, without lawful authority.

## COUNT TWENTY
### (Bankruptcy Fraud, 18 U.S.C. § 157(1))

I.    The Bankruptcy Process

80.     A voluntary bankruptcy case is begun by the filing of a bankruptcy petition, and the person who files that petition is a "debtor" under federal bankruptcy law. The process is

conducted in a federal court and is governed by the United States Bankruptcy Code, which is found in Title 11 of the United States Code.

81.     Bankruptcy is a process by which a debtor obtains relief from creditors (those who are owed money by the debtor). The process is designed to achieve an orderly transfer of a debtor's assets to the creditors in return for a discharge or release of the debts that the debtor incurred prior to filing for the bankruptcy.

82.     Upon the filing of a bankruptcy petition, a debtor is required by law to fully disclose his or her financial circumstances, including, among other things, assets, liabilities (debts), and income. A bankruptcy "estate" is created upon the filing of a bankruptcy petition, which is a collective reference to all property in which the debtor has an interest.

83.     A bankruptcy filed under chapter 7, also known as a straight or liquidation bankruptcy, is a type of bankruptcy that can eliminate or discharge a debtor's unsecured debts. When a debtor files a petition for chapter 7 bankruptcy, there is an automatic stay that prevents creditors from collecting money or property they are owed by the debtor until the stay is lifted. As long as the stay is in effect, creditors generally may not initiate or continue lawsuits, wage garnishments, or even make telephone calls demanding payments.

84.     During a chapter 7 bankruptcy, a trustee is appointed to administer the case and liquidate the debtor's nonexempt assets. They will sell certain property the bankruptcy code does not let a debtor keep (nonexempt property) and use the proceeds to repay the creditors. The proceeds of this liquidation will be distributed to the debtor's unsecured creditors. If there are no nonexempt assets, which cases are referred to as "no asset" cases, then the debtor's unsecured creditors will not receive any money. Most chapter 7 bankruptcy cases are "no asset" cases.

85.     At the end of a chapter 7 bankruptcy, all of the debtor's unpaid debt (with some exceptions) is eliminated or discharged, which means the debtor does not have to pay them back. A creditor may no longer initiate or continue any legal or other action against the debtor to collect a debt that has been discharged.

II.     The Scheme and Artifice to Defraud

86.     The allegations contained in paragraphs 1 through 70 of this Indictment are hereby incorporated by reference as though fully set forth herein.

87.     On or about February 23, 2019, in the Southern District of Texas and elsewhere, the defendant,

CHRISTOPHER KNIGHT LOPEZ,

having devised and intended to devise the scheme and artifice to defraud described above, and for the purpose of executing and concealing said scheme and artifice and attempting to do so, filed a petition under Title 11, United States Code, that is: a chapter 7 petition for bankruptcy in the U.S. Bankruptcy Court in Houston, Texas, in violation of 18 U.S.C. § 157(1).

NOTICE OF CRIMINAL FORFEITURE
28 U.S.C. § 2461(c); 18 U.S.C. §§ 981(a)(1)(C) & 982(a)(2)

88.     Pursuant to Title 28, United States Code, Section 2461(c) and Title 18, United States Code, Sections 981(a)(1)(C) and 982(a)(2), the United States gives notice to the defendant,

CHRISTOPHER KNIGHT LOPEZ,
JAYSON LOPEZ, and
NADIR ABDEL TORRES,

that in the event of conviction of any of the offenses charged in Counts 1-16 of this Indictment, the United States intends to seek forfeiture of all property, real or personal, which constitutes or is derived from proceeds traceable to such offenses.

20

<u>Money Judgment and Substitute Assets</u>

The United States intends to seek the imposition of a money judgment against the defendant.  In
the event that a condition listed in Title 21, United States Code, Section 853(p) exists, the United
States will seek to forfeit any other property of the defendant in substitution up to the total value
of the property subject to forfeiture.

A TRUE BILL:

# **Original Signature on File**

_____
FOREPERSON OF THE GRAND JURY

JENNIFER B. LOWERY
Acting United States Attorney

_____
Justin R. Martin
Assistant United States Attorney